**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., | )<br>)<br>)     Case No. 1:21-cv-10641-PAC<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| CARNIVAL PLC, | )<br>) |
| Defendant. | )<br>) |

**DEFENDANT CARNIVAL PLC'S MEMORANDUM OF LAW IN**
**SUPPORT OF ITS MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ..............................................................................................5

**BACKGROUND** .................................................................................................................7

   I.  The Carnival-Owned Vessels .................................................................................7

   II.  The Unaffiliated Global Maritime Vessels ...........................................................9

**ARGUMENT** ....................................................................................................................10

   I.  Plaintiff Fails to Identify a Valid, Binding Contract with Carnival for P&I and/or FD&D
Insurance ..............................................................................................................11

      A.  Plaintiff's Self-Published Rules Cannot Require Carnival Pay Premiums............................12

      B.  Rule 4 of the American Club Rules Does Not Require a Co-Assured to Pay Premiums .......13

      C.  None of the American Clubs Rules Require That Carnival Pay the Global Maritime
Charterers' Premium ..........................................................................................16

   II.  Plaintiff Fails to Adequately Allege a Breach of Contract................................................16

      A.  Carnival is Not a Co-Assured.............................................................................17

      B.  Carnival is Not Liable for "Fleet" Premiums ......................................................18

   III.  Carnival Had No Insurable Interest in the Global Maritime Vessels ...............................19

   IV.  Plaintiff Fails to Allege Facts Sufficient to Support an Account Stated .........................22

**CONCLUSION**  ..............................................................................................................24

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*805 Third Ave. Co. v. M.W. Realty Assoc.*,
    58 N.Y.2d 447, 461 N.Y.S.2d 778, 448 N.E.2d 445 (1983) ...........................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................................10

*Canzona v. Atanasio*,
    989 N.Y.S.2d 44 (N.Y. App. Div. 2d Dept. 2014) ...........................................................11

*Creative Waste Mgmt. v. Capitol Envtl. Servs., Inc.*,
    429 F. Supp.2d 582 (S.D.N.Y. 2006) ...............................................................................15

*Dean v. Tower Ins. Co. of New York*,
    19 N.Y.3d 704, 979 N.E.2d 1143 (2012) .........................................................................18

*Dejesus v. HF Mgmt. Servs., LLC*,
    726 F.3d 85 (2d Cir. 2013) ...............................................................................................10

*Eagle Star Ins. Co. v. Int'l Proteins Corp.*,
    45 A.D.2d 637, 360 N.Y.S.2d 648 (1974) ..................................................................12, 13

*Freeman v. Fulton Fire Ins. Co.*,
    1862 WL 3981 (N.Y. Gen. Term. 1862) ..........................................................................21

*Friscia v. Safeguard Ins. Co.*,
    57 Misc. 2d 759, 293 N.Y.S.2d 695 (Civ. Ct. 1968) ........................................................22

*Gloria D. Wiseman, Plaintiff, ' v. ING Groep, NV et al.*,
    2017 WL 4712417 (S.D.N.Y. Sept. 28, 2017) .................................................................10

*Highlands Ins. Co. v. PRG Brokerage, Inc.*,
    2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) ........................................................................10

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
    679 F. Supp. 2d 395 (S.D. N.Y. 2009) ............................................................................22

*Martin, Delicatessen, Inc. v. Schumacher*,
    52 N.Y.2d 105 (1981) .......................................................................................................11

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F .3d 184 (2d Cir. 2007) ...................................................................10

*Orange Cnty. Choppers, Inc. v. Olaes Enter., Inc.*,
   497 F.Supp.2d 541 (S.D.N.Y. 2007) .........................................................10

*PaineWebber, Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996) ......................................................................14

*Ryan Graphics, Inc. v. Bailin*,
   39 A.D.3d 249 (1st Dept. 2007) .................................................................23

*Sea Trade Co. v. FleetBoston Fin. Corp.*,
   2007 WL 1288592 (S.D.N.Y. May 1, 2007) ..............................................14

*Swan Media Grp., Inc. v. Staub*,
   841 F.Supp.2d 804 (S.D.N.Y. 2012) .........................................................10

*Wolff v. Rare Medium, Inc.*,
   210 F. Supp. 2d 490 (S.D.N.Y. 2002) .......................................................11

**Rules**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) ..........................................5, 10

**Other Authorities**

§ 41:1. Nature and necessity of insurable interest, 3 Couch on Ins. ...............20, 21

16 Williston on Contracts § 49:74 (4th ed.) ......................................................11

68A N.Y. Jur. 2d Insurance § 1030....................................................................20

U.K. Marine Insurance Act 2015, § 53 ..............................................................12

U.K. Marine Insurance Act 2015, § 4 ................................................................20

Defendant Carnival plc ("**Defendant**" or "**Carnival**"), by and through its counsel, Watson Farley & William LLP, submits this memorandum of law in support of its motion to dismiss Plaintiff American Steamship Owners Mutual Protection and Indemnity Association, Inc.'s, ("**Plaintiff**" or the "**American Club**") complaint ("**Complaint**") pursuant to Federal Rule of Civil Procedure ("**Rule**") 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

Carnival bareboat chartered two cruise vessels to subsidiaries of the Global Maritime Group ("**Global Maritime**"). The subsidiaries, as contractual counterparties to the bareboat charters with Carnival (the "**Global Maritime Charterers**"), were required by the relevant charters to operate the vessels as an owner, maintaining the vessels and obtaining all provisions, fuel and crew. The Global Maritime Charterers were also required to obtain hull and machinery ("**H&M**") insurance covering any loss or damage to the vessel itself, and protection and indemnity ("**P&I**") insurance covering any liabilities created by the operation of the vessels, such as the personal injury of a passenger or damage to cargo. The Global Maritime Charterers were not required to obtain freight, demurrage and defense ("**FD&D**") insurance which provides "cover for claims handling assistance and for legal costs in relation to a wide range of disputes.... outside the scope of P&I or H&M insurance."[1]

The Global Maritime Charterers placed this insurance through their own broker without any input from Carnival. With respect to the P&I coverage placed with Plaintiff, Carnival would receive a "Certificate of Entry" for each of the two chartered vessels showing that the Global Maritime Charterers had indeed placed the appropriate insurance. Carnival had no contact with Plaintiff, who prepared these

---

[1] The American Club itself states that "'FD&D' or simply 'Defense,' [insurance] provides members with cover for claims handling assistance and for legal costs in relation to a wide range of disputes. *Such disputes are outside the scope of P&I or H&M insurance* and arise from the building, buying, selling, owning or operation of an entered vessel." *See* The American Club, Freight, Demurrage and Defense (FD&D) Insurance (https://www.american-club.com/page/freight-demurrage-defense-insurance) (emphasis added).

Certificates of Entry, nor any contact with Plaintiff or the Global Maritime Charterers' insurance brokers who negotiated the coverage.  Plaintiff never issued any invoices to Carnival until years after it began insuring the vessels and a year after the insurance had been terminated for non-payment.

The vessels were operated by the Global Maritime Charterers for several years until the COVID-19 pandemic struck.  The Global Maritime Charterers, and apparently the whole Global Maritime group, which operated a total of six cruise vessels insured by Plaintiff, were unable to pay their bills.  The two Carnival vessels were then sold to satisfy maritime liens and claims incurred by the Global Maritime Charterers.

Plaintiff chose not to make any claim in the court ordered liquidation of the vessels for alleged premiums due.  Instead, almost a year after Plaintiff cancelled the insurance covering the two Carnival-owned vessels, Plaintiff sent a letter through its counsel to Carnival for Charterers' unpaid insurance premiums, together with an invoice.  Moreover, Plaintiff demanded that Carnival pay all premiums (including P&I and FD&D premiums) for not just the two Carnival-Owned Vessels, but four additional vessels operated by Global Maritime, which vessels Carnival did not own or operate.  Carnival had no ownership interest in Global Maritime or any of its subsidiaries or affiliates and had no interest whatsoever in the four non-Carnival owned vessels.

Nevertheless, Plaintiff, who is not in privity with Carnival for any of the vessels, has demanded Carnival pay all insurance premiums for the whole Global Maritime fleet.  To justify this position, Plaintiff points to insufficient language contained in the P&I certificates of entry and to changeable rules that it has posted on a website.

This Court should dismiss the Complaint in its entirety because Plaintiff fails to sufficiently allege that Carnival agreed to pay premiums of the Carnival vessels, let alone four additional vessels operated

by Global Maritime.  The Complaint represents a last-ditch effort by Plaintiff to recover funds following the insolvency of its contractual counterparties.

Further, Plaintiff's claim for "accounts stated" must also be dismissed because Plaintiff asserts only conclusory and unsupported allegations that it presented an undisputed account to Carnival – as it fails to mention it had never sent Carnival an invoice for premiums during the years Plaintiff provided P&I coverage to Global Maritime.  The first invoice for premiums for the two Carnival-owned vessels and the four non-Carnival owned vessels was sent approximately one year after Plaintiff terminated insurance coverage.  Carnival promptly and vehemently disputed this invoice.

### **BACKGROUND**

**I.       The Carnival-Owned Vessels**

Carnival, a cruise ship operator, owned the vessels M/V COLUMBUS and M/V VASCO DA GAMA (the "**Carnival-Owned Vessels**") until October 2020.  *See* Declaration of Louise Lloyd, dated February 14, 2022, (the "**Lloyd Decl.**") ¶¶ 5, 6, 23.

Carnival entered into a bareboat charter agreement with Lyric Cruise Ltd. as charterer ("**Lyric**") for the M/V COLUMBUS dated March 3, 2016 (the "**Lyric Charter**"), and a similar bareboat charter agreement with Mythic Cruise Ltd. as charterer ("**Mythic**") for the M/V VASCO DA GAMA dated on or about January 18, 2019 (the "**Mythic Charter**", together with the Lyric Charter, the "**Global Maritime Charters**").

Upon information and belief, Lyric and Mythic were subsidiaries of Global Maritime.  *See* Lloyd Decl. ¶ 9.  Pursuant to the Global Maritime Charters, Lyric and Mythic, as charterers, were required to obtain H&M insurance and P&I insurance for the Carnival-Owned Vessels.  *See* Lloyd Decl. ¶ 10.  The Global Maritime Charterers' broker placed the P&I insurance for the Carnival-Owned Vessels with Plaintiff.  *See* Lloyd Decl. ¶ 11.  Carnival neither instructed nor directed that the Carnival-Owned Vessels

be entered as part of any "fleet entry." *See* Lloyd Decl. ¶ 14.  Carnival never entered into any agreement with Plaintiff to pay premiums for insurance. *See* Lloyd Decl. ¶ 13.

Carnival received certificates of entry of the P&I insurance coverage on the Carnival-Owned Vessels by the Global Maritime Charterers' broker. *See* Lloyd Decl. ¶ 15.  The certificates of entry for the Carnival-Owned Vessels identify only the M/V COLUMBUS and M/V VASCO DA GAMA as the insured vessels. *See* Lloyd Decl. ¶ 16 and Lloyd Decl. Ex. A (the "**Certificates of Entry**").  The Certificates of Entry do not name any other vessels. *Id.*  The Certificates of Entry do not reference any type of insurance other than P&I insurance. *See* Lloyd Decl. ¶ 17 and Lloyd Decl. Ex. A.

By about May and June 2020, Mythic and Lyric, respectively, ceased making payments to Carnival due under the Global Maritime Charters. *See* Lloyd Decl. ¶ 18.

By letter dated July 21, 2020 and addressed only to Global Maritime Group Inc., referencing the Carnival-Owned Vessels and four other entities/vessels, Plaintiff advised that, as of July 21, 2020, it was owed a total of $732,932.44 for all of the vessels (including $302,879.51 for the Carnival-Owned Vessels), and "hereby tender[ed] fourteen (14) calendar days' notice of cancellation of cover…". *See* Lloyd Decl. ¶ 20 and Ex. B (the "**Notice of Termination**").  The statement of account that Plaintiff included with the Notice of Termination referenced "advance call" for "P&I" insurance. *See* Lloyd Decl. Ex. B.  Plaintiff did not address the Notice of Termination to Carnival, nor did it copy Carnival on the Notice of Termination. *See* Lloyd Decl. ¶ 21 and Ex. B.

Global Maritime informed Carnival of the Notice of Termination on July 21, 2021. *See* Lloyd Decl. ¶ 19.  Plaintiff did not make any demands from Carnival for insurance premiums on the Carnival-Owned Vessels or any other vessels prior to or as of the date of the Notice of Termination. *See* Lloyd Decl. ¶ 22.  During October 2020, the Carnival-Owned Vessels were judicially sold to satisfy maritime liens and claims incurred by the Global Maritime Charterers. *See* Lloyd Decl. ¶ 23.

On September 21, 2021, over one year after the Notice of Termination, Plaintiff contacted Carnival demanding $2,178,198.05 for "all insurance premiums" regarding six vessels, including the two Carnival-Owned Vessels.  *See* Lloyd Decl. ¶ 24 and Lloyd Decl. Ex. C (the "**September 2021 Correspondence**"). The September 2021 Correspondence did not specify the type of insurances for which Plaintiff was seeking premiums.  *See id.*  Carnival's counsel responded to Plaintiff on September 23, 2021.  *See* Lloyd Decl. ¶ 24.

Thereafter, Carnival received a letter from Plaintiff's counsel dated October 18, 2021, inclusive of an invoice.  *See* Lloyd Decl. ¶ 25 and Lloyd Decl. Ex. D (the "**October 2021 Letter**").  In the October 2021 Letter, Plaintiff alleged, among other things, that Carnival owed insurance premiums on the two Carnival-Owned Vessels and four other vessels operated by Global Maritime.  *See* Lloyd Decl. ¶ 27 and Lloyd Decl. Ex. D.   The October 2021 Letter again did not specify the type of insurances for which Plaintiff was seeking premiums.  *See* Lloyd Decl. ¶ 25 and Lloyd Decl. Ex. D.  Carnival rejected Plaintiff's claims through its counsel by letter dated November 9, 2021.  *See* Lloyd Decl. ¶ 26.

## II.      The Unaffiliated Global Maritime Vessels

In the October 2021 Letter, Plaintiff claimed that Carnival was liable for insurance premiums on not only the Carnival-Owned Vessels, but also the M/V ASTOR, M/V ASTORIA, M/V MAGELLAN and M/V MARCO POLO, which vessels Carnival understands were chartered or owned by Global Maritime affiliated entities (the "**Global Maritime Vessels**"). *See* Lloyd Decl. ¶ 27 and Lloyd Decl. Ex. D.

At all relevant times, Carnival did not own the Global Maritime Vessels, nor is it affiliated with Global Maritime.  *See* Lloyd Decl. ¶ 28.  Carnival did not enter, or cause the entry of, the Global Maritime Vessels, as a fleet entry or otherwise, with Plaintiff.   *See* Lloyd Decl. ¶ 31.  Carnival received no certificates of entry in respect of the Global Maritime Vessels.  *See* Lloyd Decl. ¶ 32.

## ARGUMENT

## The Court Should Dismiss the Complaint for Failure to State a Claim

The Complaint should be dismissed because Plaintiff fails to state a claim against Carnival.  Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed where a plaintiff's allegations fail to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  To avoid dismissal, it is incumbent on a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Allegations that demonstrate only the "mere possibility of misconduct" are insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a court must accept as true the facts alleged in the complaint, a court need not accept as true legal conclusions asserted in the complaint.  *Id.*; *see also Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (citations omitted).  In resolving a motion to dismiss, review is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F .3d 184, 191 (2d Cir. 2007).

New York law and the *Twombly–Iqbal* standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached; otherwise, the complaint must be dismissed.  *Swan Media Grp., Inc. v. Staub*, 841 F.Supp.2d 804, 807–08 (S.D.N.Y. 2012); *Orange Cnty. Choppers, Inc. v. Olaes Enter., Inc.*, 497 F.Supp.2d 541, 554 (S.D.N.Y. 2007); *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004); *see also Gloria D. Wiseman, Plaintiff,' v. ING Groep, NV et al.*, 2017 WL 4712417, at *4 (S.D.N.Y. Sept. 28, 2017).

I.     **Plaintiff Fails to Identify a Valid, Binding Contract with Carnival for P&I and/or FD&D Insurance**

Plaintiff fails to identify any binding contract between itself and Carnival.  To prevail on a breach of contract claim under New York law, Plaintiff must allege (a) the existence of a contract, (b) a breach of the contract, and (c) damages resulting from the breach.  *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002); *see also Canzona v. Atanasio*, 989 N.Y.S.2d 44, 47 (N.Y. App. Div. 2d Dept. 2014).  To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.  *See Martin, Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981).  It is a basic tenet of contract law that "[a] person must be a party to an insurance contract or assume a duty to pay to be liable for the payment of premiums." 16 Williston on Contracts § 49:74 (4th ed.).

Plaintiff cannot establish that Carnival entered into any agreement with the American Club relating to P&I or FD&D insurance for the Carnival-Owned Vessels, or the Global Maritime Vessels, individually or as a fleet.  Plaintiff does not allege that Carnival received the American Club's By-Laws and Rules[2] (the "**American Club Rules**") – from Plaintiff, the Global Maritime Charterers, or the Global Maritime Charterers' broker.  Indeed, Carnival never received notice that it was bound by, and Plaintiff never provided Carnival with a copy of, the American Club Rules, with respect to the Carnival-Owned Vessels or the Global Maritime Vessels.  *See* Lloyd Decl. ¶ 35.  Carnival did not sign any contract with Plaintiff or otherwise agree to be bound by the American Club's Rules.  *See* Lloyd Decl. ¶ 34.

It is not uncommon for the only contact between an insured and an insurer in the marine insurance market to be the broker.  The U.K. Marine Insurance Act, upon which the marine insurance law of the

---

[2] The American Club Rules, for the 2020/2021 policy year at issue, which are attached as Ex. 1, *available at* https://www.american-club.com/files/files/American_Club_By_Laws_Rules_2020-21.pdf

United States is to a large extent fashioned[3], has statutorily recognized this regime.  Insurers such as Plaintiff deal with brokers, with whom they negotiate and issue a contract for the broker's principle. Section 53 of the U.K. Marine Insurance Act, provides: "[u]nless otherwise agreed, where a marine policy is effected on behalf of the insured by the broker, the broker is directly responsible to the insurer for the premium, and the insurer is directly responsible to the insured for the amount which may be payable in respect of losses, or in respect of returnable premium".[4]  Effectively, the section imposes the risk of the insured's insolvency on the broker, and the risk of a broker's insolvency on the insurer.  English courts continue to uphold the rule that insurers cannot withhold payment for a loss under a policy on the basis that the broker has not paid the premium.[5]

Here, the Global Maritime Charterers were required to obtain H&M and P&I insurance for the Carnival-Owned Vessels.  *See* Lloyd Decl. ¶ 10.   Plaintiff dealt with a broker of Global Maritime, whom Carnival did not instruct.  *See* Lloyd Decl. ¶¶ 11-12.  Indeed, the only document Carnival ever received relating to the policy were the Certificates of Entry for each of the Carnival-Owned Vessels, relating to P&I insurance.  The Certificates of Entry for the Carnival-Owned Vessels were provided to Carnival as proof of P&I insurance, they were not a contract with Plaintiff.

### A.  Plaintiff's Self-Published Rules Cannot Require Carnival Pay Premiums

It is undisputed that Carnival did not contract directly with Plaintiff.  Nor did Carnival have any input on the American Club Rules which are claimed to govern Plaintiff's claim.  As evidenced by

---

[3] *Eagle Star Ins. Co. v. Int'l Proteins Corp.*, 45 A.D.2d 637, 360 N.Y.S.2d 648 (1974), *aff'd sub nom. Eagle Star Ins. Co., Ltd v. Int'l Proteins Corp.*, 346 N.E.2d 249 (1976) (Contracts of marine insurance are subject to laws of admiralty and governed by federal law which refers to English law since harmonious decisions in this field are deemed highly desirable.)

[4] U.K. Marine Insurance Act 2015 § 53, *available at* https://www.legislation.gov.uk/ukpga/Edw7/6/41

[5] *See* CTRL Marine Solutions, Insurance Act 2015, https://www.shipownersclub.com/media/2016/08/Insurance-Act-2015.pdf (publication by law firm founded by The Shipowners' Club, an international mutual insurance association).

Plaintiff's Complaint, the American Club Rules change regularly (*see* Compl. ¶¶ 15-19), without any input from Carnival or probably anyone other than the Plaintiff's lawyers.  Such a self-made insurance policy is a contract of adhesion and cannot be used to require a party to the contract to pay additional premiums, let alone a third-party such Carnival.

Indeed, the Appellate Division, First Department has held that "a contract of adhesion such as the marine insurance policy involved herein is prepared and executed by the insurer, but is not signed by the assured who merely 'adheres' to the formal document and is bound by its terms.  The obligations of the assured are only conditions precedent or promissory warranties, the breach of which may vitiate the policy, but do not give rise to a claim for additional premiums or for breach of contract."  *Eagle Star Ins. Co., Ltd. v. Int'l Proteins Corp.*, 45 A.D.2d 637, 650-51 (N.Y. App. Div. 1st Dept. 1974).

Carnival is an insured in this case only because its contractual counterparties, here the Global Maritime Charterers, were required to provide it coverage under the Global Maritime Charters.  Carnival did not procure the insurance or agree to be bound by its terms.  The situation is no different than an insurer of a furniture moving company requiring the moving company's customer to pay premiums because the customer is named on a certificate proving the customer's goods are insured and the insurance company has a website saying the customer must pay if the moving company does not.  Such a one-sided bargain is not a contract and the American Club's self-drafted "Rules" cannot compel Carnival to pay for insurance negotiated and placed by someone else.

**B.  Rule 4 of the American Club Rules Does Not Require a Co-Assured to Pay Premiums**

Plaintiff states that "[t]he rights and obligations of every member and co-assured of The American Club are governed by the terms and conditions of the Certificates of Entry and the American Club's By-Laws and Rules."  Compl. ¶ 9.  However, this language does not appear in the only documents provided to Carnival relating to the insurance (i.e., the Certificates of Entry).  Indeed, the Certificates of Entry for

each Carnival-Owned Vessel provide that "the vessels set forth herein for the account of the Member" which, under common parlance, would mean the charterers, Mythic and Lyric, subsidiaries of Global Maritime, would be liable for the premiums.

The only language in the Certificates of Entry relating to Co-Assureds provides: "[t]he Member and any CoAssureds named in this Certificate of Entry are liable to pay Mutual Premium as provided for in Rule 4." However, Rule 4 contains no mention of Co-Assureds anywhere. Rule 4 never provides that a Co-Assured may be liable to pay premiums for a Member, whether solvent or insolvent. Nor has Plaintiff alleged that Carnival is a Member. The only "Member(s)" identified on the Certificates of Entry are the Global Maritime Charterers.

"Under New York law, an extrinsic document is deemed to be incorporated by reference only when the agreement specifically references and sufficiently describes the document to be incorporated, such that the latter 'may be identified *beyond all reasonable doubt.*" *Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03 CIV. 10254 (JFK), 2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007) (quoting *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (emphasis added in *Bybyk*; further citation omitted). A general reference to another document is insufficient as a matter of law to incorporate that other document into the subject agreement or contract.

Indeed, the court in *Sea Trade Co.* was unwilling to even hold a signatory to such an ambiguously incorporated term, noting "it is not clear that Nani knew of or assented to the provisions of the Terms and Conditions. Because the Signature Card refers only generally to 'regulations' and 'rules', as discussed above, Nani's knowledge of and assent to the provisions of the Terms and Conditions cannot be inferred merely by looking to the express language of the Signature Card. 2007 WL 1288592 at *4-5. Rather, "[i]t must be clear that the parties knew of and consented to the terms to be incorporated by reference for

14

these terms to be valid." *Creative Waste Mgmt. v. Capitol Envtl. Servs., Inc.*, 429 F. Supp.2d 582, 602 (S.D.N.Y. 2006) (citing *Bybyk*, 81 F.3d at 1201; further citation omitted).

Thus, even if Carnival had indicated it assented to the American Club Rules, which it did not, the failure of Rule 4 to provide that Co-Assureds are liable for unpaid mutual calls or other premiums would be fatal to Plaintiff's Complaint, as Rule 4 is the only rule referenced in the Certificates of Entry provided to Carnival.

### C. None of the American Clubs Rules Require That Carnival Pay the Global Maritime Charterers' Premium

Even assuming that Carnival is bound by the American Club Rules – which rules were not negotiated with, signed by or otherwise agreed to by Carnival – Plaintiff has not established that the American Club Rules impose any liability on Carnival.

The Certificates of Entry, which were the only insurance related documents provided to Carnival, do not provide that listed "CoAssureds" are liable for insurance premiums.  Plaintiff points out that the Certificates of Entry issued to Charterers state that "[t]he Member [Charterer] and any CoAssureds named in this Certificate of Entry are liable to pay *Mutual Premium* as provided for in Rule 4".  Compl. ¶ 21 (emphasis added).  The American Club's own Rule 4(1) provides that every certificate of entry "**shall clearly state whether or not the insurance is mutual or fixed premium insurance.**"  *See* Ex. 1, pg. 84 of 142 (emphasis added).  However, the Certificates of Entry do not clearly provide whether the insurance is on a mutual or fixed basis.  Aside from this reference to "Mutual Premium" and warning that mutual *members* may be liable for additional calls, there is no other reference in the Certificates of Entry as to whether the insurance is provided on a mutual or fixed basis.  This is important because fixed price insurance would be paid by the insured in advance, whereas a member might receive a dividend from the insurer under the mutual insurance scheme or be required to pay additional premium "calls" – which is

exactly what Plaintiff is seeking from Carnival here.  *See* Lloyd Decl. Ex. D (the invoice for the Global Maritime fleet indicating outstanding amounts due are for calls).

Thus, in the one insurance related document provided to Carnival, Plaintiff does not even comply with the single rule it has cited because the Certificates of Entry fail to "clearly identify" if the insurance premium is fixed or mutual.

Plaintiff fails to sufficiently allege that Carnival breached a contract to pay insurance premiums, because no such contract exists between Plaintiff and Carnival.  Plaintiff provides only the two Certificates of Entry for the Carnival-Owned Vessels, which Certificates of Entry are not signed by Carnival, were not negotiated by Carnival, and do not clearly identify whether the insurance is fixed or mutual, in contravention of the Plaintiff's own American Club Rules.

## II.    Plaintiff Fails to Adequately Allege a Breach of Contract

Plaintiff fails to adequately allege which portions of the American Club Rules Carnival would have breached if the American Club Rules applied to Carnival.

### A.  Carnival is Not a Co-Assured

The American Club's Rules state that a "Co-Assured" is "[a]ny person who is insured in accordance with the terms of Rule 1.3.8 to 1.3.11."  *See* Ex. 1, pg. 37 of 142.  Plaintiff fails to establish that Carnival is a "Co-Assured" pursuant to the American Club Rules 1.3.8 to 1.3.11.

Rule 1.3.8 refers to "the cover afforded to a Co-assured who is a time or voyage charterer of an insured vessel and who is affiliated to or associated with a Member (other than a Co-assured expressly given cover by the Association in accordance with Rule 1.3.10)…".  *See* Ex. 1, pg. 41 of 142.  Plaintiff has not alleged that Carnival is a time or voyage charterer, nor that it is affiliated to or associated with the Global Maritime Charterers.

Rule 1.3.9 states that:

> The cover afforded to a Co-assured who has entered into a contract with the Member for the provision of services for or by the insured vessel, and any sub-contractor of the Co-assured, shall extend only to liabilities, losses, costs and expenses which are to be borne by the Member under the terms of the contract and which would, if borne by the Member, be recoverable by the Member from the Association, provided that:
> i.    the contract has been expressly approved by the Managers [Plaintiff];
> ii.    the contract provides that each party shall be similarly responsible for any loss or damage to its own (or its sub-contractors') property or loss of life or personal injury to its own (or its sub-contractors') personnel.

*See id.*  Plaintiff fails to allege that Carnival entered into any contract for the provision of services for or by the Carnival-Owned Vessels or the Global Maritime Vessels.

Rule 1.3.10 states "[t]he cover afforded to all other categories of Co-assureds, other than those referred to in Rules 1.3.7 to 9 inclusive, shall only extend insofar as such Co-assured may be found liable to pay in the first instance for loss or damage which is properly the responsibility of the Member…".  *See* Ex. 1, pg. 42 of 142.  Plaintiff fails to allege whether Carnival falls into any category of "Co-Assureds" referred to in the American Club Rules 1.3.7 to 9; moreover, Plaintiff fails to allege that Carnival is liable for losses or damages that would otherwise be a responsibility of Global Maritime (i.e., the Member).

Finally, Rule 1.3.11 states that "[t]he cover afforded to an Affiliate shall extend only to claims made and enforced through the Affiliate in respect of any liabilities for which the Member has cover and nothing herein contained shall be construed as entitling an Affiliate to recover any amount which would not have been recoverable from the Association by the Member had the claim been made and enforced against the Member."  An "Affiliate" is defined as "[a]ny person who is insured in accordance with Rule 1.3.12."  *See* Ex. 1, pg. 37 of 142.  Rule 1.3.12 states that "[t]o the extent that the Association has indemnified a Co-assured or an Affiliate in respect of a claim, it shall not be under any further liability

and shall not make any further payment to any person whatsoever, including the Member, in respect of that claim or of the loss or damage in respect of which that claim was brought."

Notwithstanding the circuitous and self-serving definition of "Affiliate", Plaintiff has not alleged that Carnival is an "Affiliate" of Global Maritime or any other entity that would be liable to pay insurance premiums; nor has Plaintiff alleged that it has indemnified Carnival in any way in respect of the Carnival-Owned Vessels or the Global Maritime Vessels.

To support a breach of contract, the provisions of the parties' agreement must establish the rights of the parties and prevail over conclusory allegations in the complaint. *805 Third Ave. Co. v. M.W. Realty Assoc.*, 58 N.Y.2d 447, 451, 461 N.Y.S.2d 778, 780, 448 N.E.2d 445 (1983).   Moreover, any ambiguities in an insurance policy are to be construed against the insurer." *Dean v. Tower Ins. Co. of New York*, 19 N.Y.3d 704, 979 N.E.2d 1143 (2012).

Plaintiff fails not only to identify how Carnival would qualify as a "Co-Assured" if Carnival were bound by the American Club Rules, but also any other provisions of the American Club Rules that Carnival would have breached if it were bound by those rules.

**B.  Carnival is Not Liable for "Fleet" Premiums**

Plaintiff claims that Carnival and Global Maritime "entered several vessels as a fleet entry with The American Club for several policy years".  Compl. ¶ 9.  However, Plaintiff provides no evidence that Carnival entered any vessels with the American Club, much less that it entered the Carnival-Owned Vessels as part of a "fleet entry."  The Certificates of Entry for the Carnival-Owned Vessels that Plaintiff relies upon contain no references to any other vessel, or any "fleet".  *See* Lloyd Decl. Ex. A.  The

Case 1:21-cv-10641-PAC   Document 12   Filed 02/14/22   Page 19 of 25

Certificates of Entry explicitly state they are "evidence only of the contract of indemnity insurance between the above-named Member and the Association…".  *See* Lloyd Decl. Ex. A.

Further, even if Carnival were bound the American Club Rules, which Carnival is not, Carnival could not have entered the Global Maritime Vessels as a fleet.  The American Club Rules define "Fleet" as "[a]ny two or more vessels insured hereunder having *common nominal, or beneficial, ownership, management or control*."  *See* Ex. 1, pg. 38 of 142 (emphasis added).  At all relevant times, Carnival did not have common nominal, or beneficial, ownership, management or control over the Global Maritime Vessels in any way.  *See* Lloyd Decl. ¶ 29.

Plaintiff claims that because Carnival is listed as a "Co-Assured on Certificates of Entry… for vessels entered with The American Club as part of the Fleet Entry," "Carnival is jointly and severally liable for *all* insurance premiums due on the Fleet Entry."  Compl. ¶¶ 11, 13 (emphasis added).  Plaintiff's pleadings imply that Carnival is identified as a "Co-Assured" on the certificates of entry for each of the "Fleet Entry" vessels.  However, Plaintiff attaches to its Complaint only the Certificates of Entry for the two Carnival-Owned Vessels.  *See* Compl. Lloyd Decl. Ex. A.  Nothing on the Certificates of Entry for the Carnival-Owned Vessels did or could have put Carnival on notice that Plaintiff would pursue Carnival for outstanding premiums owed on any vessel, let alone the Global Maritime Vessels which Carnival had no connection with at all.  *See* Lloyd Decl. Ex. A.

## III.    Carnival Had No Insurable Interest in the Global Maritime Vessels

 Carnival had no insurable interest in the Global Maritime Vessels and could not benefit from insurance placed on those four vessels.  *See* Lloyd Decl. ¶ 30.  Even had Carnival wished to insure the Global Maritime Vessels it could not.

> An "insurable interest" may be defined as any lawful and substantial
> economic interest in the safety or preservation of the subject of the
> insurance free from loss, destruction, or pecuniary damage. An insurable
> interest need not be in the nature of ownership but rather can be any kind of

19

> benefit from the thing so insured or any kind of loss that would be suffered
> by its damage or destruction. Historically, an insurable interest was not a
> requirement for a contract of insurance. Accordingly, contracts were held
> valid, particularly in the case of marine risks notwithstanding that the
> absence of an insurable interest gave the transaction the characteristics of a
> wager.
>
> By the turn of the century, the need to have an insurable interest was widely
> recognized. Today, it is universally held, either by force of statute or upon
> public policy grounds, that an insurable interest is necessary to the validity
> of a policy no matter what the subject matter.

§ 41:1. Nature and necessity of insurable interest, 3 Couch on Ins.

Any contract of insurance placed on the unrelated Global Maritime Vessels would be void under

New York law and the law of most jurisdictions.[6]

> No contract or policy of insurance on property made or issued in New York,
> or made or issued on any property in New York, is enforceable except for
> the benefit of some person having an insurable interest in the property
> insured. If no insurable interest exists, the contract is void; moreover, there
> can be no recovery under a policy without an insurable interest.
>
> An insurable interest in property is essential to the validity of insurance of
> that property since, as property insurance is based entirely upon the
> principle of indemnity, if there is no insurable interest there can be no loss,
> and the insurance would amount to a wager, which public policy condemns.

 68A N.Y. Jur. 2d Insurance § 1030.

At all relevant times, Carnival was not the owner or operator of the Global Maritime Vessels. See

Lloyd Decl. ¶¶ 28-29.   Carnival could not be held liable for any damage done by Global Maritime

Vessels.  Carnival could not make a claim on any insurance on the Global Maritime Vessels.  Carnival

derived no pecuniary benefit from the unrelated Global Maritime Vessels.

---

[6] The U.K. Marine Insurance Act 2015 § 4 provides: "(1) Every contract of marine insurance by way of gaming or wagering is void. (2) A contract of marine insurance is deemed to be a gaming or wagering contract—
  (a)  Where the assured has not an insurable interest as defined by this Act, and the contract is entered into with no expectation of acquiring such an interest;"
*available at* https://www.legislation.gov.uk/ukpga/Edw7/6/41

The American Club's "fleet" rule might be applicable to Global Maritime, as operator of the fleet and as a "Member" on each entry.  Global Maritime hoped to gain financially from operating each vessel and could be held liable for damage caused in operating the Global Maritime Vessels. Accordingly, Global Maritime had an insurable interest in all of the vessels in its fleet.  The application of this rule to an owner of a vessel that it charters to a fleet operator, however, is absurd.

Many "fleets" operated by commercial shipping companies consist of vessels chartered from numerous owners.  Maersk, for example, has 401 chartered vessels in its fleet and the CMA CGM Group included 386 chartered vessels amongst its fleet as of January 2022.[7]  Often, owners own only a single vessel which is chartered to the charterer/operator.  To attempt to hold an owner liable for premiums for all the vessels in the charterer/operator's fleet is not only ludicrous, it violates the rule on the necessity of having an insurable interest.

"When a policy is void for want of an insurable interest, notes given for the premium on the policy are void for want of consideration.  Moreover, no acts of either party can validate or give effect to the void policy, and an assignee, having no greater rights under the policy than the insured, cannot enforce the policy."  § 41:1. Nature and necessity of insurable interest, 3 Couch on Ins.

Indeed, the concept of insurable interest is so fundamental that the failure to plead such an interest exists has been held reason enough to dismiss a complaint under the policy.  *See Freeman v. Fulton Fire Ins. Co.*, 1862 WL 3981 (N.Y. Gen. Term. 1862) ("The Court of Appeals has explicitly declared, that in all actions upon insurance policies, the plaintiff must aver and prove the interest of the plaintiff. It is an indispensable part of the plaintiff's case, to be made out affirmatively at the trial.") (internal citations

---

[7] Number of chartered ships of the world's leading container ship operators as of January 31, 2022:
https://www.statista.com/statistics/197662/chartered-ships-of-worldwide-leading-container-ship-operators-in-2011/#:~:text=Leading%20container%20ship%20operators%20%2D%20number%20of%20chartered%20ships%202022&text=The%20Danish%20shipping%20company%20Maersk,fleet%20of%20386%20container%20ships.

omitted); *see also Friscia v. Safeguard Ins. Co.*, 57 Misc. 2d 759, 760, 293 N.Y.S.2d 695, 697 (Civ. Ct. 1968) ("The burden of pleading and proving such an interest is on the plaintiff and the failure to so plead warrants a dismissal of the complaint.") (internal citations omitted).

Indeed, if Carnival were to make a claim on vessels insured by Plaintiff, which Carnival had no interest in whatsoever, Plaintiff would call it insurance fraud.  Similarly, Plaintiff cannot charge premiums to a complete stranger to the insurance contract and the *res* insured because it alleges its self-drafted rules say so.

Accordingly, Plaintiff has failed to allege sufficient facts to sustain an action for premiums on the Global Maritime Vessels.

## IV.     Plaintiff Fails to Allege Facts Sufficient to Support an Account Stated

Plaintiff fails to establish that Carnival is liable for any premiums (and especially premiums for the other "fleet" of vessels) because Plaintiff has not established it provided Carnival with an uncontested statement of account.  The essential elements of the claim to enforce an account stated are (i) an account was presented, (ii) which was accepted as correct, and (iii) debtor promised to pay such amount.  *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395 (S.D.N.Y. 2009).

Plaintiff claims that it "issued insurance premium invoices for the Fleet Entry for P&I coverage and FD&D coverage", amounting to "at least $1,978,198.05", and that "[d]espite demands for payment, the outstanding premiums due and owing on the Fleet Entry have not been paid."  Compl. ¶¶ 22-24.

With respect to the Carnival-Owned Vessels, or any of the Global Maritime Vessels purportedly comprising the "fleet", Plaintiff never communicated with Carnival regarding any pending claims, nor reported on the proceeds recovered on any claims that could offset any premiums owed to Plaintiff.  *See* Lloyd Decl. ¶ 33.  By the time Carnival received the September 2021 Correspondence and October 2021

Letter, over one year had passed after Plaintiff issued the Notice of Termination for non-payment by the Global Maritime Charterers.  *See* Lloyd Decl. ¶ 24.

Although Plaintiff alleges that it presented "an account… in the form of invoices and supporting documentation", Plaintiff fails to attach to its Complaint any such documentation.  Carnival never accepted as correct Plaintiff's claims to pay premiums first invoiced to Carnival years after the policy inception and over a year after the policy was terminated.  Carnival never promised to pay Plaintiff any amounts and in fact timely objected to such claims on several occasions after the belated invoice was issued.  Further, Plaintiff's "account" is inconsistent.  The Global Maritime Charterers allegedly owed $302,879.51 in respect of the Carnival-Owned Vessels as detailed in the Notice of Termination dated July 21, 2020.  Lloyd Decl. Ex. B.  Whereas, in the September 2021 Correspondence and October 2021 Letter, Plaintiff claims $2,178,198.05 from Carnival.  *See* Lloyd Decl. Exs. C and D.

To establish an account stated, the indebtedness must refer to an existing debt; it cannot be made to create a liability where none existed before.  *Ryan Graphics, Inc. v. Bailin*, 39 A.D.3d 249, 250 (1st Dept. 2007).  Accordingly, liability cannot be imputed upon Carnival where there was no expectation Carnival would pay, and where Carnival objected to the invoice.

## **CONCLUSION**

For the foregoing reasons, Defendant Carnival plc respectfully requests that this Court dismiss the

Complaint with prejudice.

Dated:  New York, New York
February 14, 2022

By: */s/ John G. Kissane*
John G. Kissane
Celinda J. Metro
Sabih Siddiqi
Watson Farley & Williams LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 922-2200
Fax: (212) 922-1512
Email: jkissane@wfw.com
        cmetro@wfw.com
        ssiddiqi@wfw.com

*Attorneys for Defendant Carnival plc*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2022, a true copy of the foregoing was filed electronically on the Court's CM/ECF docketing system.  Notice of this filing will be sent by e-mail to all parties and all counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.


*/s/ John G. Kissane*

John G. Kissane