UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
AMERICAN STEAMSHIP OWNERS           :
MUTUAL PROTECTION AND                :
INDEMNITY ASSOCIATION, INC.,         :
                                                               :    21-cv-10641 (PAC)
                        *Plaintiff*,                       :
                                                               :    **OPINION & ORDER**
         -against-                                        :
                                                               :
CARNIVAL PLC,                                      :
                                                               :
                        *Defendant*.                  :
------------------------------------------------------X

Defendant Carnival PLC ("Carnival") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint filed by Plaintiff American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club"). ECF Nos. 1, 20. The Complaint alleges a breach of contract claim and an account stated together with attorney's fees based on Carnival's failure to pay an invoice for insurance provided by the American Club. The motion to dismiss is **DENIED**.

## BACKGROUND

The following allegations are drawn from the Complaint and those documents incorporated by reference. The American Club is a non-profit mutual insurance association that covers shipowners and charterers in commercial operations. Compl. ¶¶ 5, 7. Coverage is based on a principle of mutuality where members "essentially insure one another." *Id.* ¶ 7.

Carnival is a corporation that owns and/or operates cruise line vessels. *Id.* ¶ 6. Carnival chartered two of its cruise line vessels to subsidiaries of Global Maritime Inc. ("Global Maritime"). As part of its charter agreement, Carnival required the subsidiaries to obtain insurance. Global Maritime entered the two chartered vessels as part of a fleet entry of six vessels with the American

1

Club for several policy years beginning in 2016. *Id.* ¶¶ 9, 13, 15. The American Club then produced Certificates of Entry, listing the two Global Maritime subsidiaries—Mythic Cruise Ltd. ("Mythic") and Lyric Cruise Ltd. ("Lyric")—as the members of the Club. On the Certificate,[1] Global Maritime is listed as a "Manager" and Carnival as a "Co-assured." *Id.* ¶ 11; Ex. A.

All members of the American Club are subject to the American Club's By-Laws and Rules (the "Bylaws"), which are publicly available online. *See id.* ¶ 8; Ex. A; *see also generally* Def's MOL, Ex. 1 (the "Bylaws"), ECF No. 12-1.[2] Rule 1.3.14 of the Bylaws states in part that a "Co-assured . . . insured on any one insurance or in respect of any fleet . . . shall be jointly and severally liable for all sums due to the Association in respect of such fleet." Compl. ¶ 20. Further, the Certificate of Entry states that "[t]he Member and any Co-Assureds named in this Certificate of Entry are liable to pay Mutual Premium as provided for in Rule 4." *Id.* ¶ 21. Rule 4 generally provides that members are liable for their insurance premiums and outlines the terms and conditions of specific premiums under an American Club membership. *See* Bylaws at 73–83.

According to the American Club, there is an outstanding balance on Global Maritime's account of $1,978,198.05. Compl. ¶ 25. The American Club demanded payment from Carnival for the outstanding insurance premium and, to date, Carnival has not made any payment. *Id.* ¶¶ 26–27.

---

[1] The Certificates of Entry provided to this Court span from 2017 through February 2021. Compl., Ex. A. The Certificates are substantially similar, so the Court considers them as one.

[2] Defendants have provided several exhibits and a declaration to consider on its motion to dismiss. The Court declines to consider most of these exhibits because they are beyond the scope of the Complaint. *See Lumpkin v. Brehm*, 230 F. Supp. 3d 178, 182 (S.D.N.Y. 2017). However, the Court does consider the Bylaws and Certificate of Entry—both of which the Complaint references extensively. *See Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022) ("[A] complaint is considered to include a document incorporated in it by reference, or where the complaint relies heavily upon its terms and effect." (internal quotations and citations omitted)).

The American Club then commenced this action, alleging breach of contract, account stated, and seeking attorney's fees based on Carnival's failure to pay the outstanding balance on the premiums. *Id.* Carnival moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6). Mot. to Dismiss, ECF No. 11.

## ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a complaint on a motion to dismiss, courts must "accept the plaintiff's factual allegations as true and draw all reasonable inferences in [its] favor." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020). "Facts that are 'conclusory' are 'not entitled to be assumed true.'" *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679). However, where there are "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citation omitted).

The parties agree that New York contract law applies to this case. *See* Def.'s MOL, ECF No. 12 at 11; Pl.'s Opp., ECF No. 19 at 9 n.2. "To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the party bringing the claim, (3) breach of contract by the other party, and (4) damages." *Mwangi v. Passbase, Inc.*, No. 21 CIV. 6728, 2022 WL 2133734, at *8 (S.D.N.Y. June 14, 2022) (internal quotations and citations omitted). "[A] plaintiff must

establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 46 (1st Dept. 2009).

Carnival asserts four reasons to dismiss the Complaint: (1) Carnival has not assented to the contract; (2) Carnival is not a "Co-assured" on Global Maritime's policy; (3) Carnival is not liable for the entire fleet entry; and (4) no account stated is adequately alleged. Throughout its submission, Carnival improperly relies on facts outside the complaint, and accusations that the American Club failed to produce evidence to bolster its claims. These considerations are irrelevant to the Court's evaluation of the complaint on a motion to dismiss and would be more appropriately considered on summary judgment. *See Brown v. Quiniou*, 02 Civ. 4630, 2003 WL 1888743, at *3 n.5 (S.D.N.Y. Apr. 16, 2003); *cf. Am. S.S. Owners Mut. Prot. v. Cleopatra Navigation Co.*, No. 07 CIV. 9353, 2010 WL 850185, at *2 (S.D.N.Y. Mar. 11, 2010) (evaluating whether defendant was a party to an American Club policy on summary judgment). As such, the Court address—and rejects—each argument in turn.

A. *Carnival's Assent to the Contract*

Carnival first asserts that the Complaint does not allege mutual assent. Mutual assent "must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Fisher v. Aetna Life Ins. Co.*, 32 F.4th 124, 136 (2d Cir. 2022) (quoting *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019)). Where a party is not on actual notice of a contract, a plaintiff may allege that the defendant was on inquiry notice of the contractual terms. Assent based on inquiry notice is commonly inferred in insurance cases where the insured has received the policy. *See, e.g., SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*, No. 01 Civ. 9291, 2003 WL 554768, *3 (S.D.N.Y. Feb. 26, 2003).

4

By its own admission, Carnival received the Certificate of Entry that clearly lists Carnival as a Co-assured on the policy. Def.'s MOL at 12. The Certificate of Entry also states that "[t]he Member and any CoAssureds named in this Certificate of Entry are liable to pay Mutual Premium as provided for in Rule 4." Compl. ¶ 21; Ex. A. This unambiguous language placed Carnival on inquiry notice of its responsibility for the insurance premium. Any failure of Carnival to acknowledge or notice these terms cannot circumvent a clear provision in the Certificate, as "[a]n insured has the duty to read the insurance policy or have it read to him or her." *Jin Chai-Chen v. Metro. Life Ins. Co.*, 141 N.Y.S.3d 41, 43 (1st Dept. 2021).

Carnival responds that the Certificate of Entry is too vague to properly incorporate any contractual duty from the Bylaws to pay a premium. Such an argument is irrelevant because the Certificate *itself* clearly states that Co-assureds would be liable for any owed premium, putting Carnival—a sophisticated party in the maritime insurance market—on notice that it was liable.[3] Carnival is thus bound by obligation to pay the premium to the American Club.

Carnival further argues that "the failure of Rule 4 to provide that Co-Assureds are liable for unpaid mutual calls or other premiums would be fatal to Plaintiff's Complaint." Def.'s MOL at 15. Elsewhere, however, the Bylaws clearly state that a Co-Assured would "be jointly and severally liable for *all sums* due to the Association in respect of such fleet." Bylaws at 31 (emphasis added); *see L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458,

---

[3] Even if the Certificate were not clear on this point, Carnival's argument still fails because the Certificate properly incorporates the Bylaws. It specifically names the Bylaws in the first sentence of the document, noting that members are "subject to" said Bylaws. *See Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 47 n.8 (2d Cir. 1993) (a document was incorporated when the contract contained "a specific reference to a single document directly identified by name" rather than "a vague allusion to an entire class of documents.").

5

467 (2d Cir. 2010) (noting that contracts should be "read in the context of the entire agreement."). The Bylaws as a whole, therefore, do provide liability on premiums for Co-assureds.

*B. Carnival's Status as a Co-Assured*

Carnival next asserts that it is not a "Co-assured" under the Bylaws' terms.[4] When parties dispute the interpretation of a contract on a motion to dismiss, the Court "need not accept plaintiff's interpretation of the language of the contract, although on a motion to dismiss it should resolve any ambiguities in [its] favor." *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 299 (S.D.N.Y. 2009).

Carnival argues the definition of Co-assured under the Bylaws is "[a]ny person who is insured in accordance with the terms of Rule 1.3.8 to 1.3.11." Bylaws at 26. It further asserts that it does not fit any definition within Rules 1.3.8 through 1.3.11 and is therefore not a Co-assured. The American Club agrees that Carnival does not fit the definition of a Co-assured in Rules 1.3.8 through 1.3.11, but notes that Carnival appears as a Co-assured on the Certificate of Entry, and indeed attaches examples illustrating its point. Compl. ¶ 11; Ex A. Further, the American Club cites to Rule 1.3.6 of the Bylaws, which states that coverage may be afforded to "any person who is affiliated to or associated with that Member that is not specifically named in the terms of entry" or "any other co-assured." Bylaws at 29.

Between the definition of "Co-assured" in the Bylaws and the provisions in Rule 1.3.6 providing for coverage of a Co-assured, there is a conflict in the definition of a "Co-assured." At the pleading stage, however, the Court resolves these ambiguities in favor of the American Club. For one, the first clause of Rule 1.3.6 states that a member may add an affiliate or associate to its policy. *See Cisco Systems, Inc. v. Synamedia*, 557 F. Supp. 3d 464, 472 (S.D.N.Y. 2021) ("A

---

[4] The operating Bylaws are those from 2020/2021. *See* Compl. ¶ 19; Bylaws at ECF pagination 2.

reading of the contract should not render any portion meaningless." (citation omitted)). The second clause of Rule 1.3.6 states that a member may apply its policy to "any *other* Co-assured," implying that the first clause references a subset of Co-assureds. Bylaws at 29 (emphasis added). Finally, Rule 1.2 states that the definitions "shall have the following meanings, *if not inconsistent with the subject or context.*" *Id.* at 26 (emphasis added). Thus, to the extent the definition of "Co-assured" conflicts with any provision of the contract, the conflicting provision would take precedent. Carnival therefore qualifies as a Co-assured under the Bylaws.

## C. *Carnival's Liability for the Fleet Premium*

Carnival next argues that the American Club has not produced evidence that "Carnival entered any vessels with the American Club." Def.'s MOL at 18. But the Court need not weigh the sufficiency of the evidence at this point in the litigation. *See Lewy*, 2012 WL 3957916, at *13. Instead, the Court evaluates whether the American Club has *alleged* that Carnival is liable for the entire premium. The American Club has done so, stating that "Global Maritime and Carnival entered several vessels as a fleet entry with The American Club for several policy year" and that "[a]s a Co-assured, Carnival is jointly and severally liable for all insurance premiums due on the Fleet Entry . . . ." Compl. ¶¶ 9, 13.

Additionally, Carnival argues it does not have an "insurable interest" in the vessels in the fleet it does not own. Carnival's argument fails because under New York law, only an insurer may raise a lack of insurable interest as a defense to liability. *See Moran v. Moran*, 346 N.Y.S.2d 424 (Dist. Ct. 1973); *cf. First Metlife Invs. Ins. Co. v. Zilkha*, No. 08CV10113, 2009 WL 2999607, at *5 (S.D.N.Y. Sept. 21, 2009) (noting the general majority rule that "the lack of an insurable interest may only be raised by the insurer").

### D. *American Club's Claim for Account Stated*

Finally, the American Club plausibly alleged an account stated. To state a claim for an account stated, a plaintiff must allege "(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated." *Consol. Energy Design Inc. v. Princeton Club of New York*, 590 F. App'x 115, 116 (2d Cir. 2015) (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009)). Importantly, "[t]he second and third requirements . . . may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time." *Id.* (citations omitted).

The American Club's allegations may be sparse, but the claim survives. The Complaint alleges that the American Club "demanded payment from Carnival regarding the outstanding insurance premiums . . . ."; that Carnival accepted this amount "without rejection or protest"; and that the account remains outstanding. *Id.* ¶¶ 26, 36. At the pleading stage, this is sufficient to sustain a claim of account stated. Carnival argues that it *did* object to the invoice, and that the account stated by the American Club is inconsistent with the invoice Carnival received. Def.'s MOL at 25. Regardless of whether Carnival is correct, the Court credits the facts as pleaded by the American Club on a motion to dismiss. For purposes of this motion, therefore, a valid account stated has been alleged.

8

## **CONCLUSION**

For the foregoing reasons, Carnival's motion to dismiss is DENIED. The Clerk of the Court is directed to terminate the motion at ECF No. 11. The parties are directed to submit to this Court a case management plan with 21 days of this Order.

Date:  New York, NY  
       September 26, 2022

SO ORDERED

*Paul A. Crotty*

Paul A. Crotty  
U.S. District Court Judge